IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–02600–EWN

RICHARD L. HALEY,

    Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

**ORDER AND MEMORANDUM OF DECISION**

    This is a social-security benefits appeal under 42 U.S.C. § 405(g) (2005). Plaintiff Richard L. Haley challenges the final decision of the Commissioner of Social Security (the "Commissioner"), denying his application for Social Security Disability Insurance (SSDI) benefits and Supplemental Security Income (SSI) benfits. Jurisdiction is based on 42 U.S.C. § 405(g).

**FACTS**

*1.  Medical Evidence*

    Plaintiff was born on July 24, 1959, and was forty-three years old at the onset of his alleged disability. (Admin R. at 87 [filed Feb. 28, 2005] [hereinafter "Admin. R."].) Plaintiff has a high school equivalency diploma, attended college for one year, and completed truck driving school in 1996. (*Id.* at 101, 283, 295.) Plaintiff has worked in the vocationally relevant past as a

truck driver, counselor at a detoxification center, resident care aide, and janitor.  (*Id.* at 96, 283–85.)  Plaintiff alleges an inability to work beginning March 28, 2001, due to residual effects of (1) neck, back and left arm pain; (2) gout; (3) Hepatitis C; (4) depression; (5) attention deficit hyperactivity disorder; (6) post traumatic stress disorder; (7) memory loss; (8) anger; and (9) sleep disturbance.  (*Id.* at 95.)

In September 1998, Plaintiff sought treatment for left rotator cuff tendinitis.  (*Id.* at 58.)  Katharine Leppard, M.D., evaluated Plaintiff and noted that on November 27, 1997, Plaintiff injured himself in a motor vehicle accident and had not worked since that day.  (*Id.*)  In July 1998 Plaintiff underwent X-rays of his cervical spine.  (*Id.* at 258.)  Plaintiff's X-ray revealed a congenitally small spinal canal and bulges at C4–5 and C5–6.  (*Id.*)

In August 1999, October 1999, December 1999, January 2000, and February 2000, Michael Welch, D.O., evaluated Plaintiff at the Community Health Centers, Inc., and diagnosed Plaintiff with gout, sinusitis, and bronchitis.  (*Id.* at 197–201.)

In February 2000, Dr. Welch ordered Plaintiff to undergo X-rays of the lumbar spine and a Magnetic Resonance Imaging ("MRI") of the left shoulder.  (*Id.* at 256.)  Plaintiff's X-rays revealed some degree of degenerative disk narrowing of L-5.  (*Id.*)  Plaintiff's MRI revealed mild supraspinatus tendonitis/tendonopathy.  (*Id.* at 257.)

In March 2000, Edward Ausman, D.O., evaluated Plaintiff.  (*Id.* at 171.)  Dr. Ausman performed a physical therapy evaluation.  (*Id.* at 171–72.)  Plaintiff reported fifteen years of problems with his neck, back, and shoulders which was exacerbated by the motor vehicle accident two year prior.  (*Id.* at 171.)  Dr. Ausman recommended that Plaintiff attend physical therapy

three times per week.  (*Id.* at 172.)  Plaintiff never attended "any of the subsequently scheduled treatment appointments."  (*Id.* at 178.)

On January 7, 2002, Plaintiff presented to Community Health Centers, Inc., for incidental health issues.  (*Id.* at 195.)  Treatment notes from this visit indicate that Plaintiff suffered from gout.  (*Id.*)  On January 30, 2002, Plaintiff presented to Community Health Centers, Inc., and reported that he was doing well, but had some complaints associated with gout.  (*Id.*)

On April 24, 2002, Plaintiff presented for an initial evaluation at Pikes Peak Mental Health.  (*Id.* at 215–27.)  Plaintiff reported that he had major depression and suicidal thoughts.  (*Id.* at 215.)  On April 19, 2002, Plaintiff received a diagnosis of post traumatic stress disorder and depression.  (*Id.* at 226.)

On April 25, 2002, Dr. Welch evaluated Plaintiff at the Community Health Centers, Inc.  (*Id.* at 188–92.)  Plaintiff had good range of neck motion without tenderness.  (*Id.* at 189.)  Dr. Welch diagnosed Plaintiff with gastroenteritis.  (*Id.*)

In June 2002, Plaintiff sought treatment at Community Health Centers, Inc., for dyspepsia and gastritis.  (*Id.* at 186.)  Plaintiff also reported low back pain.  (*Id.* at 185.)  Plaintiff had good range of motion without tenderness.  (*Id.* at 186.)  In July 2002, Plaintiff sought treatment at the Community Health Centers, Inc., for chronic intermittent lower back pain.  (*Id.* at 243.)  Plaintiff's physical was normal.  (*Id.* at 244–46.)  The physician who evaluated Plaintiff noted that Plaintiff was obese.  (*Id.* at 244.)

On August 26, 2002, R. Terry Jones, M.D., evaluated Plaintiff at the request of the Disability Determination Services.  (*Id.* at 228.)  Plaintiff reported that he had a severe case of

gout which started in his big toe but spread throughout his body. (*Id.*) Dr. Jones diagnosed Plaintiff with a personality disorder. (*Id.* at 233.) Dr. Jones noted that Plaintiff's mental status examination was within normal limits and he appeared to have "a normal mood and range of affect." (*Id.*) Dr. Jones reported that Plaintiff has a drinking and drug problem and he would benefit from a drug treatment program. (*Id.*)

On August 28, 2002, Tim Moser, M.D., evaluated Plaintiff. (*Id.* at 234–38.) Plaintiff reported that he was able to cook, wash dishes, sweep, and mop. (*Id.* at 235.) Dr. Moser diagnosed Plaintiff with (1) chronic neck and back pain; (2) gout; (3) probable sleep apnea; (4) hepatitis C; and (5) post traumatic stress disorder. (*Id.* at 237.) Dr. Moser noted that Plaintiff did not have any restrictions for sitting and "[t]here [were] no medically necessary assistive devices at this time." (*Id.*) Dr. Moser opined that Plaintiff could stand or walk about six hours in an eight-hour workday secondary to lower back pain and gout. (*Id.*)

On September 9, 2002, Jason Richter, M.D., a psychiatrist reviewed Plaintiff's records and completed a Psychiatric Review Technique Form ("PRTF"). (*Id.* at 156–65.) Dr. Richter noted that Plaintiff had a personality disorder and had difficulty controlling his anger. (*Id.* at 156, 164.) Dr. Richter opined that Plaintiff generally had no significant limitations in understanding and memory, sustained concentration and persistence, and social interaction. (*Id.* at 166–67.) Plaintiff had moderate limitations in understanding, remembering, and carrying out detailed instructions. (*Id.*) Additionally, Plaintiff had moderate limitations in interacting with the general public and accepting criticism from supervisors. (*Id.*)

In July 2003, Plaintiff underwent a pulmonary function test. (*Id.* at 248.) The pulmonary function report revealed that Plaintiff had "minimal airway obstruction," which indicated asthma. (*Id.*) On November 25, 2003, Plaintiff visited the emergency department at Memorial Hospital. (*Id.* at 252.) Plaintiff complained of pain and swelling in this left knee due to gout. (*Id.*) Plaintiff reported that he was in too much pain to extend his knee "so he keeps it flexed." (*Id.*) Ironically, Plaintiff drove himself to the hospital and operated a "clutch with that leg while he was driving." (*Id.*) The emergency room physician prescribed medications and advised plaintiff to use crutches for four or five days. (*Id.*) On December 2, 2003, Plaintiff sought treatment at Community Health Centers, Inc., for severe left knee pain, nausea, diarrhea, headache, and vomiting. (*Id.* at 240.) The physician diagnosed Plaintiff with positive edema and positive list with ambulation. (*Id.*)

### *2. Procedural History*

Plaintiff applied for disability insurance benefits on May 16, 2002 and supplemental security income benefits on April 24, 2002. (*Id.* at 87–89, 259–60.) The Social Security Administration denied his application on September 13, 2002. (*Id.* at 71.) The Administrative Law Judge ("ALJ") held a hearing on Plaintiff's claim on January 28, 2004, at which Plaintiff and a vocational expert testified. (*Id.* at 15–22, 280–309.)

Plaintiff testified that in the past, he worked as a truck driver, resident care aide, counselor at a detoxification center, and janitor. (*Id.* at 96, 283–85.) Plaintiff stated that he was fired from the majority of his past jobs for reasons unrelated to his illness. (*Id.* at 295–99.) Plaintiff stated that he had gout attacks at least every month and a bout of gout lasted anywhere from five days to

three weeks.  (*Id.* at 285–86.)  Plaintiff testified that he is unable to (1) vacuum; (2) do laundry; (3) clean; (4) make his bed; and (5) can only grocery shop on occasion.  (*Id.* at 291–92.)  Plaintiff stated that he receives welfare benefits in the amount of one-hundred eighty dollars per months.  (*Id.* at 193–94.)  Plaintiff testified that he reads "fairly well," but he cannot write.  (*Id.* at 294.)  Plaintiff testified that he could not afford medical treatment, but he confirmed that a community health clinic offered treatment and he received treatment through the homeless clinic.  (*Id.* at 290–91.)

Martin Rauer, a vocational expert, testified at the hearing.  (*Id.* at 300–10.)  The ALJ asked Rauer to consider a hypothetical individual who was the same age and had the same education and work history as Plaintiff with the following limitations:

> [o]ccasionally lift up to [twenty] pounds; could stand and walk six hours in an eight-hour day; could only occasionally bend, stoop, and crouch; could understand, remember, and carry out only certain simple instructions and not detailed or complex instructions; and a person could tolerate only occasional contact with coworkers.

(*Id.* at 302.)  Rauer responded that such an individual could not perform Plaintiff's past relevant work with the exception of the detoxification counselor.  (*Id.* at 302.)  Rauer testified that the individual described in the hypothetical could perform the following light, unskilled jobs:  (1) small products assembler; (2) electronics worker; (3) buffer; and (4) hand packer.  (*Id.* at 305.)

The ALJ issued a decision on April 16, 2004.  (*Id.* at 15–22.)  The ALJ determined Plaintiff was not disabled because he retained the RFC to perform light work.  (*Id.* at 21.)  The ALJ added that such work exists in significant numbers in the national economy.  (*Id.* at 21–22.)

In reaching his conclusion, the ALJ first found that Plaintiff had not engaged in substantial gainful activity since March 28, 2001. (*Id.* at 16.) Next, the ALJ determined that Plaintiff suffers from the following impairments: (1) gout; (2) neck, back and left knee pain; (3) obesity; (4) hepatitis C; (5) sleep apnea; (6) personality disorder; (7) history of depression; (8) attention deficit disorder; (9) post-traumatic stress disorder; and (10) substance abuse. (*Id.*) While these impairment are "severe," the ALJ determined that "they are not attended with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in the Listing of Impairments." (*Id.* at 17.) Next, the ALJ determined Plaintiff's RFC. In determining Plaintiff's RFC, the ALJ found that Plaintiff was not credible because his complaints were inconsistent with the medical evidence. (*Id.* at 19–20.) Based on the evidence presented to him, the ALJ issued his RFC determination. The ALJ concluded that:

> [Plaintiff] retains the [RFC] for light work with the following limitations: lift and carry [ten] pounds frequently, [twenty] pounds occasionally; stand/walk about [six] hours in an [eight]-hour day, with no limits on sitting; occasional bending, stooping, and crouching; understand, remember, and carry out only short and simple instructions; tolerate only occasional contact with co-workers and supervisors.

(*Id.* at 20.) In accord with this RFC, the ALJ determined that Plaintiff could not perform his past relevant work. (*Id.*) The ALJ determined that there are a significant number of jobs in the regional and national economy that Plaintiff could still perform, and therefore the ALJ found that Plaintiff was not disabled. (*Id.*) Plaintiff appealed this decision, and on October 20, 2004, the Appeals Council declined to review the ALJ's determination. (*Id.* at 7–10.) Thus, the ALJ's decision became the Commissioner's final decision for the purposes of the present appeal.

Plaintiff filed a complaint in this court on December 17, 2004, challenging the Commissioner's denial of disability insurance benefits.  (Compl. [filed Dec. 17, 2004].)

## ANALYSIS

### *1.  Standard of Review*

Section 405(g) of the Social Security Act establishes the scope of this court's review of the Commissioner's denial of disability insurance benefits.  *See* 42 U.S.C. § 1383(c)(3) (2004) (incorporating review provisions of 42 U.S.C. § 405[g]).  Section 405(g) provides, in relevant part, that

> [t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner of Social Security or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner of Social Security, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C.A. § 405(g).  Thus, this court's review is limited to determining whether the record as a whole contains substantial evidence supporting the Commissioner's decision.  *See id.*; *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992).  The court must uphold the Commissioner's decision if it is supported by substantial evidence.  *See Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir. 1987).  This court cannot re-weigh the evidence nor substitute its judgment for that of the ALJ.  *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir. 1987).  That does not mean, however, that my review is merely cursory.  To find that the ALJ's decision is supported by substantial evidence, the record must include sufficient relevant evidence that a reasonable person might deem adequate to support the ultimate conclusion.  *Frey v. Bowen*,

816 F.2d 508, 512 (10th Cir. 1987).  A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it.  *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985).  The ALJ's decision is also subject to reversal for application of the wrong legal standard.  *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Frey*, 816 F.2d at 512.

### *2.      Evaluation of Disability*

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than sixty-five years of age, and is under a "disability."  *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).  The Social Security Act defines a disability as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2004).  In proving his disability, a plaintiff must make a *prima facie* showing that he is unable to return to prior work he has performed.  *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).  Once the claimant meets that burden, the Commissioner must show that the claimant can do other work activities and that the national economy provides a significant number of jobs which the claimant could perform.  *Frey,* 816 F.2d at 512.

The Commissioner has established a five-step process to determine whether a claimant qualifies for disability-insurance benefits.  *See Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987) (describing five-step analysis); 20 C.F.R. § 404.1520 (2004).  A claimant may be declared

disabled or not disabled at any step; and, upon such a determination, the subsequent steps may be disregarded. *See Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988); 20 C.F.R. § 404.1520(a). First, the claimant must demonstrate that he is not currently involved in any substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a medically severe impairment (or combination of impairments) which limits his physical or mental ability to do basic work activities. *Id.* § 404.1520(c). At the third step, if the impairment matches or is equivalent to established listings, then the claimant is judged conclusively disabled. 20 C.F.R. § 404.1520(d). If the claimant's impairments are not equivalent to the listings, the analysis proceeds to the fourth step. At this stage, the claimant must show that the impairment prevents him from performing work he has performed in the past. *See Williams,* 844 F.2d at 751 (citations omitted). If the claimant is able to perform his previous work, he is not disabled. *Id.*; 20 C.F.R. § 404.1520(e). This step requires a three phase analysis.

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted). The fifth step requires the Commissioner to demonstrate that the claimant has the RFC to perform other work based on the claimant's age, education, past work experience, and there is availability of that type of work in the national economy. *See Williams*, 844 F.2d at 751; 20 C.F.R. § 404.1520(f).

### 3.    *Disability Determination*

Plaintiff alleges that the ALJ committed three errors in his disability determination. (Pl.'s Br. at 9–15.) First, Plaintiff contends that the ALJ failed to correctly determine Plaintiff's RFC. (*Id.* at 9–12.) Next, Plaintiff asserts that the ALJ did not satisfy his burden at step five of the sequential evaluation. (*Id.* at 13–14.) Finally, Plaintiff alleges that the "ALJ's pain and credibility evaluation was faulty." (*Id.* at 14–15.) I need only address Plaintiff's second argument.[1]

The ALJ relied exclusively on Rauer's testimony at step five of the sequential evaluation. (Admin. R. at 20.) The ALJ asked Rauer to consider a hypothetical individual who was the same age and had the same education and work history as Plaintiff with the following limitations:

> Occasionally lift up to [twenty] pounds; could stand and walk six hours in an eight-hour day; could only occasionally bend, stoop, and crouch; could understand, remember, and carry out only certain simple instructions and not detailed or complex instructions; and a person could tolerate only occasional contact with coworkers.

(*Id.* at 302.) Rauer testified that the individual described in the hypothetical could perform the following light, unskilled jobs: (1) small products assembler; (2) electronics worker; (3) buffer; and (4) hand packer. (*Id.* at 305.) The ALJ determined that "[t]he undersigned accepts the vocational expert's testimony and finds that a significant number of jobs exist in the national economy which the claimant is capable of performing." (*Id.* at 21.)

The ALJ's hypothetical was not complete and omitted several of Plaintiff's impairments. "'[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimants impairments cannot constitute substantial evidence to support the [ALJ's] decision.'" *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quoting *Ekeland v. Bowen*, 899 F.2d 719, 724

---

[1] I do not express any opinion regarding Plaintiff's first and third arguments.

[8th Cir. 1990]).  At step two of the sequential evaluation, the ALJ determined that Plaintiff suffers from the following impairments: (1) gout; (2) neck, back and left knee pain; (3) obesity; (4) hepatitis C; (5) sleep apnea; (6) personality disorder; (7) history of depression; (8) attention deficit disorder; (9) post-traumatic stress disorder; and (10) substance abuse.  (Admin. R. at 16.)  The ALJ's hypothetical to Rauer eliminated Plaintiff's (1) fatigue resulting from sleep apnea, (2) shortness of breath due to obesity or obstructive airway disease, and (3) any pain and limitations associated with gout.  Thus, the hypothetical the ALJ posed to Rauer did "not relate with precision all of [Plaintiff's] impairments."  *Hargis*, 945 F.2d at 1492.  Accordingly, there is not substantial evidence in the record to support the ALJ's decision.

### *4.   Conclusions*

Based on the foregoing it is therefore

ORDERED that the Commissioner's decision is REVERSED and REMANDED for proceedings consistent with this opinion.

Dated this 1st day of December, 2005

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge